**No. 25-5345**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

JOSHUA CROSS,

*Plaintiff-Appellant*.

*vs*.

HALEON US HOLDINGS LLC,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Central District of California
District Court Case No. 2:24-cv-09325-MCS-PVC
The Honorable Mark C. Scarsi

# PLAINTIFF-APPELLANT'S OPENING BRIEF

Laurence D. King
Matthew B. George
Blair E. Reed
Clarissa R. Olivares
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*breed@kaplanfox.com*
*colivares@kaplanfox.com*

Justin B. Farar
**KAPLAN FOX & KILSHEIMER LLP**
12400 Wilshire Boulevard, Suite 910
Los Angeles, CA 90025
Telephone: 310-614-7260
*jfarar@kaplanfox.com*

*Counsel for Plaintiff-Appellant Joshua Cross and the Proposed Class*

# TABLE OF CONTENTS


Page

INTRODUCTION ........................................................................................1
JURISDICTION..........................................................................................4
ISSUES PRESENTED..................................................................................5
STATEMENT OF THE CASE.......................................................................5
A. Relevant Facts........................................................................................5
1. No Toothpaste Can Actively Repair Gums Or Reverse Gum Damage .....6
2. The FDA Cautioned Against Gum Repair Claims....................................8
3. A Reasonable Consumer Could Be Duped Into Thinking Parodontax ACTIVE GUM REPAIR Can Actively Repair Gums .............................10
B. Relevant Procedural History...................................................................11
C. The District Court's Order.......................................................................12
SUMMARY OF THE ARGUMENT .............................................................14
STANDARD OF REVIEW ...........................................................................17
ARGUMENT ..............................................................................................17
A. The District Court Erred In Finding Plaintiff Did Not Plead That The Parodontax ACTIVE GUM REPAIR Labels Could Deceive A Reasonable Consumer...........................................................................................17
1. Plaintiff Plausibly Alleged Facts To Support His Claims Under Rule 9(b)...................................................................................................18
a. Plaintiff Plausibly Alleged That The "Repair" And "Reverse" Representations Are Outside The ANPR's Authorized Language.....19
b. The District Court Failed To Use The Plain Meaning Of "Repair" And "Reverse" In Its Analysis ........................................................22
2. A Reasonable Consumer Could Plausibly Understand That Parodontax ACTIVE GUM REPAIR Toothpaste Affirmatively Repairs Gums........30
B. Plaintiff's UCL Claim Should Survive Under The "Unfair" And "Unlawful" Prongs ..........................................................................................36
CONCLUSION............................................................................................39
CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................15

*Bain v. Cal. Tchrs. Ass'n*,
891 F.3d 1206 (9th Cir. 2018) ....................17

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ....................31

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2003) ....................15

*Bliss v. CoreCivic, Inc.*,
978 F.3d 1144 (9th Cir. 2020) ....................37

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ....................18

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (2006) ....................36

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956, 964 (9th Cir. 2018) .................... 15, 18, 24, 29

*Delarosa v. Boiron, Inc.*,
818 F. Supp. 2d 1177 (C.D. Cal. 2011) ....................22

*Deutsch v. Flannery*,
823 F.2d 1361 (9th Cir. 1987) ....................29

*Drake v. Procter & Gamble Co.*,
No. 21-CV-279-DWD, 2021 WL 5359804 (S.D. Ill. Nov. 17, 2021) ....................20

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .................... 22, 28, 38

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) .................... 28, 29

*Faulkner v. ADT Sec. Servs., Inc.,*
706 F.3d 1017 (9th Cir. 2013) ....................17

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
345 F. Supp. 3d 1111 (N.D. Cal. 2018) ....................35

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Friedman v. AARP, Inc.*,
855 F.3d 1047 (9th Cir. 2017) .......... 36

*Greisen v. Hanken*,
925 F.3d 1097 (9th Cir. 2019) .......... 16, 39

*Horti v. Nestle HealthCare Nutrition, Inc.*,
No. 21-CV-09812-PJH, 2022 WL 16748613 (N.D. Cal. Nov. 7, 2022) .......... 34

*Horti v. Nestle Healthcare Nutrition, Inc.*,
No. 22-16832, 2023 WL 8613601 (9th Cir. Dec. 13, 2023) .......... 31, 34, 35

*Kang v. P.F. Chang's China Bistro, Inc.,*
844 F. App'x 969 (9th Cir. 2021) .......... 35, 37

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002), as modified (May 22, 2002) .......... 30

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 38, 39

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .......... 37

*Lilly v. ConAgra Foods, Inc.*,
743 F.3d 662 (9th Cir. 2014) .......... 17

*Lozano v. AT & T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007) .......... 36

*Maisel v. Tootsie Roll Indus., LLC*,
No. 20-CV-05204-SK, 2021 WL 3185443 (N.D. Cal. July 27, 2021) .......... 29

*Mohamed v. Kellogg Co.,*
No. 14-CV-2449 L (MDD), 2015 WL 12469107 (S.D. Cal. Aug. 19, 2015) .......... 29

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .......... 31, 33

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 29

*Peterson v. Mazda Motor of Am., Inc.*,
44 F. Supp. 3d 965 (C.D. Cal. 2014) .......... 37

*Raich v. Gonzales*,
500 F.3d 850 (9th Cir. 2007) .......... 39

*Reid v. Johnson & Johnson*,
780 F. 3d 952 (9th Cir. 2015) .......... 15, 30

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Scheibe v. ProSupps USA, LLC*,
141 F.4th 1094 (9th Cir. 2025) ........................................ 17

*Schneider v. Chipotle Mexican Grill, Inc.*,
328 F.R.D. 520 (N.D. Cal. 2018) ........................................ 28

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ........................................ 16, 39

*Souter v. Edgewell Pers. Care Co.*,
542 F. Supp. 3d 1083 (S.D. Cal. 2021) ........................................ 22

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) ........................................ 31, 32, 33, 35

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ........................................ passim

### RULES

Federal Rules of Civil Procedure
Rule 9(b) ........................................ passim

### STATUTES

21 U.S.C. § 352(a) ........................................ 9, 38

28 U.S.C. § 1291 ........................................ 4

California's Unfair Competition Law ("UCL"),
Business & Professions Code §§ 17200, *et seq*. ........................................ passim

Class Action Fairness Act of 2005 ("CAFA"),
28 U.S.C. §§ 1332 ........................................ 4

Consumers Legal Remedies Act ("CLRA"),
California Civil Code §§ 1750, *et seq*. ........................................ passim

### OTHER AUTHORITIES

Advanced Notice of Proposed Rulemaking ("ANPR"),
68 Fed. Reg. 32232, May 29, 2003 ........................................ passim

## INTRODUCTION

Haleon US Holdings LLC ("Haleon") manufactures, markets, and sells the Parodontax ACTIVE GUM REPAIR ("Parodontax") toothpaste at issue in this case. Haleon knows that no toothpaste with a sole active ingredient of stannous fluoride alone—including Parodontax ACTIVE GUM REPAIR—can repair gums or reverse gum damage. Yet, Haleon promises that Parodontax ACTIVE GUM REPAIR can do just that and uses these deceptive claims to entice consumers like Plaintiff-Appellant Joshua Cross ("Plaintiff") to purchase it.

With misleading promises prominently displayed in the product's name and on its packaging, Parodontax ACTIVE GUM REPAIR convinces consumers it can actively "repair gums" and "help[] reverse early signs of gum damage":




This is not true from a scientific perspective—and the FDA has never approved such claims despite Haleon's extensive protestations to the district court that it did. In fact, the FDA warned manufacturers like Haleon against using their superior medical and scientific knowledge to exploit consumers who may rely on such claims in over-

the-counter products and then avoid seeking necessary medical treatment for serious periodontal disease that causes *irreversible* gum loss.

Whether a reasonable consumer would be deceived by Haleon's promises that its toothpaste could "repair" gums is not appropriate for determination on a motion to dismiss except in the rarest of cases—and at least one other district court has upheld similar toothpaste claims over a Rule 12 challenge. The district court's holding that this is one of those unique or unusual cases that should be dismissed on the pleadings runs counter to long-standing Ninth Circuit precedent, particularly when the claims made promise medical benefits that are not possible. This is especially true when the district court simultaneously found that Haleon's claims were not subject to federal preemption, imposed its own contorted definition of the term "repair," and ascribed specialized, medical knowledge to everyday consumers. Indeed, this case is the opposite of unique or unusual—it is exactly the kind of garden-variety consumer claim that regularly passes the pleadings stage in this Circuit.

The name of the product itself, "ACTIVE GUM REPAIR" stands out among other toothpaste offerings. Compared to Haleon's Parodontax COMPLETE PROTECTION toothpaste, which in all respects is nearly identical to Parodontax ACTIVE GUM REPAIR save for the misleading representations, it is easy to see how a reasonable consumer could be duped into thinking that Parodontax ACTIVE

GUM REPAIR can repair gums. Indeed, one only need imagine a busy consumer running errands to understand the impact of the false statements. Just picture a harried consumer in the chain retail drugstore, trying to run through her shopping list before picking the kids up from soccer practice, looking at the multitude of toothpaste options in front of her. She sees toothpastes that promise shiny, whiter teeth and toothpastes that promise to help keep her breath fresh. And then she sees a toothpaste called Parodontax ACTIVE GUM REPAIR that also says it "helps reverse early signs of gum damage." Approaching middle age, she recalls the hygienist warning her about her receding gums at her last teeth cleaning and thinks surely this is better than the other options that only prevent cavities or promise a shinier smile. So, she picks up Parodontax ACTIVE GUM REPAIR—while paying a price premium for the nonexistent health benefits—and goes on about her day. But unbeknownst to her and other typical consumers, Parodontax ACTIVE GUM REPAIR will never *actively* repair gum loss or reverse gum damage because that is scientifically *impossible*. In fact, despite heavy lobbying by Haleon and others, the FDA does not authorize the terms "repair" and "reverse" on products like Parodontax ACTIVE GUM REPAIR and has specifically cautioned manufacturers of toothpaste against these statements since such statements could—and in this instance, do—*mislead consumers*.

Given these facts, Haleon's representations about Parodontax ACTIVE GUM REPAIR here are plain and certainly clear enough to amply establish the "who, what, when, where, how, and why" as required to state a claim under Rule 9(b). And, although it is a question of fact better left for the class certification and summary judgment stages of the case, it is entirely plausible for purposes of Rule 12 that a reasonable consumer would trust that Haleon's representations that Parodontax ACTIVE GUM REPAIR will actively "repair gums" and "help[] reverse early signs of gum damage" means that Parodontax ACTIVE GUM REPAIR could repair their receding or otherwise damaged gums. Finally, regardless of what a reasonable consumer could believe, Plaintiff's claims under the "unfair" and "unlawful" prongs of California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq*. ("UCL") (unlike the "fraudulent" prong) do not rise and fall with the determination of whether the representations were misleading. Thus, the judgment below should be vacated.

## JURISDICTION

The district court had jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332. It entered its judgement dismissing this case on July 28, 2025, ER-3, and Plaintiff filed a timely notice of appeal on August 21, 2025, ER-164. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Did the district court err in finding, as a matter of law, that Haleon's Parodontax ACTIVE GUM REPAIR label claims, including "active gum repair" and "helps reverse signs of early gum damage" were unsupported by allegations sufficient to demonstrate why they are false or misleading?

2. Did the district court err in finding, as a matter of law, that no reasonable consumers would believe that Haleon's Parodontax ACTIVE GUM REPAIR label claims, including "active gum repair" and "helps reverse signs of early gum damage," imply that Parodontax ACTIVE GUM REPAIR will repair gums?

3. Did the district court err in dismissing Plaintiff's Unfair Competition Law ("UCL") cause of action under the unfair and unlawful prongs?

## STATEMENT OF THE CASE

### A. Relevant Facts

Haleon manufactures oral health products including the products at issue in this case: Parodontax ACTIVE GUM REPAIR toothpaste. ER-119. Haleon's Parodontax ACTIVE GUM REPAIR toothpaste is labeled and marketed differently from its other oral health product lines, as it claims it can actively "repair" receding or damaged gums, and is sold for retail prices of up to $8.49 ($2.50/ounce). ER-123, ER-126-27. Parodontax ACTIVE GUM REPAIR is characterized by a large,

capitalized banner on each box reading: "ACTIVE GUM REPAIR" as shown below:




ER-123. The most prominent statement is "ACTIVE GUM REPAIR" which is set in all capital letters over red background to stand out to consumers on the store shelf. ER-126. While Haleon also states, in much smaller font, that Parodontax ACTIVE GUM REPAIR is an "Anticavity and Antigingivitis Toothpaste" and "Helps Reverse Signs of Early Gum Damage," the most prominent statement is "ACTIVE GUM REPAIR." *Id.* Even the brand name "Parodontax" sounds medical. ER-123.

**1. No Toothpaste Can Actively Repair Gums Or Reverse Gum Damage**

Gingivitis is a common and mild form of early gum disease, which may cause bleeding while brushing and "irritation and swelling" of the gums at the base of the teeth, but typically causes "little or no discomfort." ER-121-22. However, left untreated, gingivitis can lead to a more advanced gum disease called periodontitis, where gums pull away and recede back from the teeth. ER-122. When the gums recede, it changes one's smile and leaves the roots of the teeth exposed. ER-124. This causes plaque and bacteria to become trapped in "periodontal pockets" under

the gums and harden in the gumline as tartar. ER-122. Left untreated, teeth may come loose and eventually fall out. ER-123. Those with untreated gum disease are also at high risk for more serious and life-threatening medical problems like heart disease, stroke, dementia and other issues. *Id*. Gingivitis can be avoided or even resolved by good at-home dental care, but periodontal disease cannot. *Id.* Indeed, the only way to remove tartar is to receive a professional dental cleaning. ER-122. But, once gum disease has advanced to gum loss and damage, no amount of personal hygiene—and certainly no over the counter toothpaste—can actively "repair" or "reverse" it as the Parodontax ACTIVE GUM REPAIR label claims. ER-124. At any stage of gum disease where there is gum loss, professional medical and dental treatment is needed to potentially repair gums. ER-124.

Haleon's representation that Parodontax ACTIVE GUM REPAIR can actively "repair" gums or "reverse" gum damage is false, deceptive and misleading because the product can, at most, "*prevent* bleeding gums" prophylactically and alleviate the earliest gingivitis symptoms like gum inflammation and plaque—but it cannot "repair" gums that have receded or are otherwise damaged or "reverse" gum damage. ER-124, ER-127. Nor can it stop gum damage once it has reached this point. ER-124. The sole active ingredient in Parodontax ACTIVE GUM REPAIR, Stannous Fluoride 0.454% (0.14% W/V Fluoride Ion), is common to most toothpastes and provides no unique gum "repair" benefits. ER-125.

In fact, Haleon even uses the identical active ingredient in another product line, Parodontax COMPLETE PROTECTION, but does not make the same gum "repair" claims—instead only claiming that it "reduces bleeding gums," "reduces inflamed gums," and "removes plaque." ER-126-27. Indeed, the Food and Drug Administration ("FDA") issued an Advanced Notice of Proposed Rulemaking, 68 Fed. Reg. 32232, May 29, 2003 (the "ANPR") that addresses the types of claims manufacturers are authorized to make regarding antigingivitis products like Parodontax. ER-69, ER-125. Tellingly, the reduction and prevention language is authorized by the ANPR, but the "repair" and "reverse" language on Parodontax ACTIVE GUM REPAIR's labels is not. ER-126. Haleon itself acknowledges consumer confusion over this on their website and admits that "if your gums have already receded, it is not possible for them to grow back. When gum disease has progressed to this stage, a toothpaste alone will not stop or reverse the condition." ER-124. Of course, Haleon chose not to place this information on the label or the package where a consumer would actually see it in the store before purchasing it. ER-123.

### 2. The FDA Cautioned Against Gum Repair Claims

Plaintiff alleged that Haleon's claim that Parodontax ACTIVE GUM REPAIR can actively "repair" gums or "reverse" gum damage violates the FDA's misbranding provision, which states that a drug is misbranded if "its labeling is false

or misleading in any particular." ER-125. In the ANPR, the FDA specifically did not approve language that claims that a product can "repair" gums or "reverse" gingivitis. ER-125-26. Rather, a marketer of a fluoride toothpaste may only indicate their product as helping to: "control," "reduce," or "prevent" gingivitis or bleeding gums; "interfere with harmful effects of plaque associated with gingivitis" or "control" "reduce" "prevent" or "remove" plaque that leads to gingivitis. ER-126. Nowhere in this list did the FDA include or address claims indicating a product can "repair" gums or "reverse" gingivitis. ER-126. These approved marketing terms are prophylactic in nature, not the sort of language that indicates that gum loss can be repaired or reversed as Haleon's Parodontax ACTIVE GUM REPAIR toothpaste advertises. ER-126. The FDA even cautioned sellers of oral care products against representations not specifically discussed in the ANPR, since such statements could—and in this instance, do—mislead consumers. ER-126. And, the Federal Food, Drug, and Cosmetic Act ("FDCA") itself prohibits labels that are "false or misleading." ER-71 (citing 21 U.S.C. § 352(a)). Here, Haleon's claim that Parodontax ACTIVE GUM REPAIR can actively "repair" gums is a misleading representation to consumers that the product can reverse or bring back lost or damaged gums, which is scientifically impossible for the product to achieve. ER-126.

#### 3. A Reasonable Consumer Could Be Duped Into Thinking Parodontax ACTIVE GUM REPAIR Can Actively Repair Gums

Like many other consumers, Plaintiff relied on the prominent "ACTIVE GUM REPAIR" label, which led Plaintiff to believe that it could "repair" damaged gums. ER-128. Plaintiff used to purchase a cheaper toothpaste but switched to Parodontax ACTIVE GUM REPAIR and paid a price premium for it, hoping that the product could help repair his damaged gums. ER-128. Plaintiff chose between Parodontax ACTIVE GUM REPAIR and other similar, less expensive, products that did not make the misleading "ACTIVE GUM REPAIR" claim. ER-128. Like Plaintiff, reasonable consumers will believe Parodontax ACTIVE GUM REPAIR toothpaste can actively "repair" and "reverse" gum damage like gum recession, loss, and periodontal pocketing. ER-127. Therefore, consumers who purchase Parodontax ACTIVE GUM REPAIR toothpaste are exposed to the deceptive gum repair representation, and as a result could prolong their gum disease if they believe they are helping "repair" gums with only a toothpaste instead of seeking professional dental care. ER-122, ER-128. Had Plaintiff known Haleon's Parodontax ACITVE GUM REPAIR claims were deceptive, false, and misleading, he would not have purchased the product, or would have paid less for it. ER-128.

Based on the forgoing, Plaintiff brought claims on behalf of himself and other similarly situated consumers against Haleon pursuant to the UCL and Consumers

Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA"), and also alleged claims for breach of warranty and unjust enrichment. ER-131-38.

### B. Relevant Procedural History

After bringing the initial action on October 29, 2024, Plaintiff filed his First Amended Complaint ("FAC"), the operative complaint, on December 6, 2024. ER-180. Pursuant to a stipulation, the FAC was filed to deal with two administrative matters: (1) to replace Haleon US Inc. with Haleon US Holdings LLC as a named defendant (at Haleon's request); and (2) to incorporate the damages portion of the CLRA claim after the 30-day CLRA notice period had lapsed. ER-84, ER-179-80. No other substantive changes were made between the original and first amended complaint. ER-84. Haleon moved to dismiss the FAC on January 3, 2025. ER-180. The matter was fully briefed and then heard on March 3, 2025. ER-181. At the hearing, the Court entertained a significant amount of argument to the preemption issue. ER-17-37. Plaintiff emphasized that the ANPR had no preemptive effect despite Haleon's protestations otherwise. ER-17-20, ER-36-37. Indeed, the Parties and Court debated the meaning of the labels and whether the FDA approved these claims for approximately 30 minutes—much longer than any consumer will spend actually shopping for toothpaste. ER-15-41. The fact there was even that much to debate about the labels essentially proves Plaintiff's point: a reasonable consumer should not need to be an expert in dental care, understand the uses and limitations of

stannous fluoride, and understand the FDA's complex regulatory scheme before buying a toothpaste that is promising to actively repair lost and damaged gums.

Nonetheless, the district court issued its order on July 11, 2025, granting Haleon's motion to dismiss. ER-181-82. In its order, the district court ultimately rejected Haleon's preemption argument, but dismissed Plaintiff's UCL and CLRA claims, and claims for unjust enrichment and breach of the implied warranty of merchantability. ER-4-14. Plaintiff's appeal focuses on his UCL, CLRA, and false advertising claims, but he no longer pursues his implied warranty or unjust enrichment claims on appeal.

### C. The District Court's Order

Although preemption is not at issue on appeal, it does shed light on the viability of Plaintiff's claims because the facts that (1) the claims are not preempted and (2) the FDA has warned against making unapproved claims lends credence to Plaintiff's theory that the Parodontax ACTIVE GUM REPAIR toothpaste claims are deceptive. Indeed, Haleon predicated most of its motion to dismiss on the argument that Plaintiff's claims were expressly preempted. ER-105-11. Much of the argument hinged on the status of the ANPR, and the district court ultimately concluded that the ANPR, as an Advanced Notice of Proposed Rulemaking, "has not been deemed a final administrative order or expressly incorporated into the FDCA's implementing regulations." ER-7. Even so, Haleon argued that it "sells Parodontax products

subject to the requirements of the [ANPR] even if the monograph does not constitute a final regulation." ER-7. Noting that Haleon's argument was "creative," the district court could not find that the ANPR had preemptive effect because of its status as an ANPR (as opposed to a final monograph) when faced with the weight of legal authority and regulatory requirements. ER-7-8.

However, the district court chose not reach Plaintiff's argument that the ANPR did not expressly authorize the terms used by Haleon, namely "repair" and "reverse." ER-70-76. If the district court had, it would have been unable to *also* conclude that the representations on Parodontax ACTIVE GUM REPAIR toothpaste were anything but misleading as the ANPR does not contain the terms "reverse" and "repair," (or even similar terms) and the FDA cautioned sellers of oral care products against representations not specifically discussed in the ANPR—since such statements presumably are likely to mislead consumers. ER-126. Indeed, the FDA did not want overpromised benefits to lead consumers to avoid seeking health care if they believe an over-the-counter product is going to fix a more serious condition like periodontal disease. ER-20-21, ER-122, ER-127. At the very least, this likely would have also led the district court to conclude that Plaintiff's UCL claim under the "unlawful" prong could proceed because Plaintiff alleged that Haleon's claim violates the FDA's misbranding provision, which states that a drug is misbranded if "its labeling is false or misleading in any particular." ER-125.

The district court also ignored Plaintiff's allegations to that effect in its Rule 9(b) and reasonable consumer analysis and stated that the "representations with which Plaintiff takes issue—'helps reverse signs of early gum damage' and 'active gum repair'—are unsupported by allegations sufficient to demonstrate why they are false or misleading." ER-8-11. Instead of applying common sense or even the dictionary definitions provided in Plaintiff's briefing, the district court fashioned its own definition of "repair," assumed that a reasonable consumer would know the complications and treatments of gum disease, and erroneously held as a matter of law that no consumer could be deceived by the representations at issue. ER-8-11.

Finally, in an effort to discourage further litigation, the district court cautioned Plaintiff against amendment as it had "no confidence that a reasonable consumer could be misled…regardless of how Plaintiff might replead his allegations." ER-13. The district court then directed Plaintiff that he should only amend "if he can do so consistent with the Federal Rule of Civil Procedure 11(b)[.]" ER-14. As no reasonable plaintiff would amend his complaint in the face of this clear admonition, this appeal followed.

## SUMMARY OF THE ARGUMENT

Plaintiff has alleged that the Parodontax ACTIVE GUM REPAIR toothpaste labels are false and misleading because no toothpaste can repair gums and thus has sufficiently alleged a cognizable claim under the UCL and CLRA that is plausible

on its face. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2003); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiff's UCL and CLRA causes of action are grounded in fraud, the FAC must additionally satisfy "the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Further, the UCL and CLRA require a plaintiff to demonstrate that a reasonable consumer is likely to be deceived. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008). Claims under the UCL and CLRA may be dismissed at the pleading stage only "in rare situations." *Reid v. Johnson & Johnson*, 780 F. 3d 952, 958 (9th Cir. 2015). This is not one of them.

Plaintiff has pleaded "why" the representations "active gum repair" and "helps reverse signs of early gum damage" are false—they are false in and of themselves. *Davidson*, 889 F.3d at 964 (9th Cir. 2018). The common sense and contextual meaning of "repair"[1] and "reverse" when used for oral care products support this contention. But, according to the district court, no reasonable consumer could think that "repair" and "reverse" have their plain meaning ascribed to them. What's more, the FDA never expressly authorized the terms "reverse" and "repair" in connection with toothpastes like Parodontax. ER-125-26. To the contrary, it

[1] Indeed, plaintiff provided the dictionary definition of "repair" in his opposition: "*repair*—meaning to 'to restore by replacing a part or putting together what is torn or broken,' or 'to restore to a sound or healthy state[.]'" ER-78 (citing Merriam Webster, https://www.merriam-webster.com/dictionary/repair, last accessed January 20, 2025).

specifically "cautioned sellers of oral care products against representations not specifically discussed in the proposed monograph, since such statements could—and in this instance, do—mislead consumers." ER-126. Likewise, Plaintiff's FAC contains sufficient facts to withstand federal pleading standards, and the district court should have left for the trier of fact the question whether reasonable consumers were likely to be deceived by the representations. *Williams*, 552 F.3d at 938 ("California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.").

Even if this Court finds as a matter of law no reasonable consumer could be deceived by the representations "active gum repair" and "helps reverse early signs of gum damage," Plaintiff's claims under the "unfair" and "unlawful" prongs of the UCL should still survive. Plaintiff adequately pleaded that there was no utility in Haleon's conduct, and that Parodontax was misbranded under the FDCA and in violation of other laws like the Sherman Act. ER-131-33. Additionally, Haleon did not address either of these prongs, and thus waived its challenge to them. *See Greisen v. Hanken*, 925 F.3d 1097, 1115 (9th Cir. 2019) ("an appellate court will not consider issues not *properly* raised before the district court") (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)) (emphasis added in original).

Because Haleon never argued against these UCL prongs, the district court likewise never addressed them.

As discussed below, this Court should reverse and remand the district court's order.

## STANDARD OF REVIEW

An appellate court reviews "de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim[.]" *Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1098 (9th Cir. 2025) (citing *Bain v. Cal. Tchrs. Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018)). On a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014) (quoting *Faulkner v. ADT Sec. Servs., Inc.,* 706 F.3d 1017, 1019 (9th Cir. 2013)).

## ARGUMENT

### A. The District Court Erred In Finding Plaintiff Did Not Plead That The Parodontax ACTIVE GUM REPAIR Labels Could Deceive A Reasonable Consumer

The district court dismissed Plaintiff's claims on two separate grounds: failure to proffer a false or misleading statement under 9(b) and failure to raise a plausible inference that a reasonable consumer would be misled by the label representations at issue: "ACTIVE GUM REPAIR" and "helps reverse signs of early gum damage."

ER-8-9. Indeed, these are two separate standards, and Plaintiff must allege statements that are false and that those statements may mislead a reasonable consumer. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 n. 2 (9th Cir. 2018). However, the district court's holding necessarily intertwines the issue because the statements "active gum repair" and "helps reverse signs of early gum damage" are false in and of themselves as explained below.

### 1. Plaintiff Plausibly Alleged Facts To Support His Claims Under Rule 9(b)

The district court held that Plaintiff failed to state sufficient facts to support his allegations that "helps reverse signs of early gum damage" and "active gum repair" are misleading. ER-9. Because Plaintiff's CLRA and UCL causes of action are grounded in fraud, "the FAC must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson*, 889 F.3d at 964 (collecting cases). "In alleging fraud ... a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To properly plead fraud with particularity under Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). Plaintiff did so—amply. Plaintiff's theory of fraud is simple: Haleon's Parodontax ACTIVE

GUM REPAIR toothpaste states it can repair gums and reverse gum damage when it cannot. ER-119-20, ER-123-24. Instead of taking Plaintiff's allegations at face value, the district court engaged in a circular and distorted analysis that would require Plaintiff and all reasonable consumers to have specialized knowledge about stannous fluoride, Parodontax's active ingredient, and each of its health benefits, uses, and limitations.

#### a. Plaintiff Plausibly Alleged That The "Repair" And "Reverse" Representations Are Outside The ANPR's Authorized Language

First, the district court took issue with the representation "helps reverse signs of early gum damage," stating that Plaintiff's allegations "subvert the purported falsity." ER-9. Plaintiff alleged that "no toothpaste can reverse signs of early gum disease beyond 'reduc[ing] bleeding gums,' 'reduc[ing] inflamed gums,' and 'remov[ing] plaque.'" ER-124, ER-127. The district court's reasoning that "[t]his necessarily implies that reducing bleeding gums, reducing inflamed gums, and removing plaque are features of antigingivitis products like Parodontax" misses the mark. ER-9. Plaintiff's allegation that the products may "help 'prevent bleeding gums' and 'reverse the effects of gingivitis'—the earliest and mildest form of gum disease[,]" does not obviate Plaintiff's theory. ER-124. Plaintiff's theory is not that Parodontax cannot reduce bleeding gums, inflammation, or swelling, which are all symptoms of gingivitis. ER-123, ER-125. Plaintiff's theory is that no toothpaste,

including Parodontax ACTIVE GUM REPAIR, can "active[ly]" "repair gum[s]" or "reverse" "gum damage," because once gum disease of any stage progresses to gum loss and gum damage, at-home care alone will not treat it, nor even stop it. ER-123-25. Haleon knows this. ER-124. Average (and therefore reasonable) consumers do not.

This is not a situation where "Plaintiff paradoxically complains that Parodontax products do not go beyond what their packaging states they can do." ER-9. Quite the opposite—it is paradoxical that the district court would ignore that the "FDA cautioned sellers of oral care products against representations [like 'active gum repair' and 'helps reverse early signs of gum damage'], since such statements could—and in this instance, do—mislead consumers[,]" and then hold that these same claims have not been sufficiently pleaded as misleading. ER-8-10, ER-126. Furthermore, at least one other court has held that the representation "gum repair" is misleading—an argument the district court glaringly ignored. *Drake v. Procter & Gamble Co.*, No. 21-CV-279-DWD, 2021 WL 5359804, at *3 (S.D. Ill. Nov. 17, 2021); ER-78-79.

As argued and alleged by Plaintiff, the ANPR authorizes labels that state "helps" plus "one of the following: 'control,' 'reduce,' or 'prevent'" in addition to "one or more of the following: 'gingivitis,' 'gingivitis, an early form of gum disease,' or 'bleeding gums'[]." ER-72 (citing ANPR at 32239), ER-125-26. The

ANPR does not address "reverse," and the representation that Parodontax can "reverse…gum damage" goes well beyond the ANPR's proscription. ER-73 (citing ANPR at 32286), ER-126. Likewise, Plaintiff alleged the ANPR does not address "repair," and thus the "active gum repair" representation too goes beyond what was contemplated in the ANPR. ER-126. In fact, the ANPR itself states that the indications of the antigingivitis products should "provide a reasonable expectation of results to be anticipated from use of the product." ER-73 (citing ANPR at 32239). Parodontax ACTIVE GUM REPAIR does not, and Plaintiff alleged as much. ER-126 ("The FDA cautioned sellers of oral care products against representations not specifically discussed in the proposed monograph, since such statements could—and in this instance, do—mislead consumers."; "Haleon's representations that Parodontax [ACTIVE GUM REPAIR] is capable of "Repair[ing]" gums are prohibited because they are not claims regarding Parodontax's ability to prevent further cavities and decay. Rather, Haleon's representations falsely and unlawfully convey to consumers that Parodontax [ACTIVE GUM REPAIR] can *reverse* or *bring back* gum loss or damage.").

The district court ignored Plaintiff's allegations and seemingly assumed that every consumer would know that toothpaste with stannous fluoride alone cannot repair gums or reverse gum damage, but the FDA would not have cautioned against representations outside the ANPR such as "repairing" or "reversing" gum damage if

they could not be interpreted as misleading to consumers. ER-126. What's more, Plaintiff alleged that "[e]ven the brand name itself—'Parodontax'—sounds medical, further confusing consumers[,]" because it is remarkably similar to what Parodontax claims it can treat—periodontitis. ER-123. And, a consumer "may not go back to the dentist when they really need to get actual medical treatment to clear it." ER-34. "Thus, if a label has an indication for use that is false, or by virtue of being on the market, implies that an OTC drug is effective when it is not, the label or advertising would be misleading[.]" *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189 (C.D. Cal. 2011); *see also Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083, 1097 (S.D. Cal. 2021); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 964-65 (9th Cir. 2016). Finally, the "active gum repair" allegation passes Rule 9(b)'s muster for the same reasons "helps reverse signs of early gum damage" does—it goes beyond what is contemplated by the ANPR and implies that the toothpaste can repair gums (which it cannot), and, as explained above, Plaintiff has alleged as much. ER-125-26.

#### b. The District Court Failed To Use The Plain Meaning Of "Repair" And "Reverse" In Its Analysis

Second, the district court also erred when it held that "Plaintiff ascribes an expansive, implausible construction to the word *repair* over a more plausible meaning." ER-9. The district court's conclusion that Plaintiff's factual allegations that toothpaste "cannot repair gums" as "[r]eceding gums do not grow back; once the gum tissue has pulled back and away from the teeth," make the representation

"active gum repair" implausible because then "gum restoration would be impossible in *any* product[]" makes no sense. ER-9-10 (citing ER-124) (emphasis in original). That is exactly why the representations are false—they fail to do what they say they purport to do.

Critically, the district court ignored an almost identical case in Illinois cited by Plaintiff (ER-78-79) that dispels the district court's exact logic:

> Plaintiff alleges that the plain and ordinary meaning of "Gum & Enamel Repair" implies that the toothpaste can repair both gums and enamel. However, Plaintiff complains that this allegation is false because "no toothpaste or toothpaste ingredient can repair gums or damage done to gums by periodontal disease." The fact that Plaintiff claims the toothpaste cannot repair damage done to gums by periodontal disease is not inconsistent or contradictory to Plaintiff's allegation that the toothpaste also cannot broadly repair gums. Further, at this stage, the Court finds that it is plausible that a consumer might rely on the "Gum & Enamel Repair" labeling without examining the additional statements on the packaging. As such, these allegations are sufficient to withstand dismissal.

*Drake*, 2021 WL 5359804, at *3 (internal citations omitted). If the district court's circular reasoning were to prevail, then no plaintiff could ever plead a false advertising claim involving a promised, but undeliverable medical benefit. As required by Rule 9(b), Plaintiff necessarily had to plead the predicate facts that no toothpaste can actively repair gums, reverse gum damage, or even stop gum damage once gums have receded or been lost. The statements are false because no toothpaste

can accomplish what the statements promise. The district court cannot then turn around and hold it against Plaintiff, a reasonable consumer, for also pleading, as required, that he was misled by such medically impossible representations because a reasonable consumer is not charged with having accurate knowledge of the precise uses and limitations of stannous fluoride and the medical treatments that the FDA has or has not approved it for. It is not as if Plaintiff is pleading that toothpaste cannot cure some medical condition unrelated to oral health such as depression or diabetes, which would be objectively unreasonable. Instead, it is plausible that Haleon is exploiting the gap between specialized knowledge held by dental professionals and what an average consumer would know about dental care in order to mislead them, increase sales, and gain a market advantage over comparable products. The district court's dismissal of "helps reverse signs of early gum damage" is also wrong for this same reason. ER-9. And at least one other court found that "gum repair" may mislead a consumer because it implies exactly that: it will repair gums. *Drake*, 2021 WL 5359804, at *3

This Court's reasoning in *Davidson* is also instructive on this point. There, plaintiff alleged that wipes advertised as "flushable" meant "suitable for being flushed," and supported that definition with multiple allegations including dictionary definitions and defendant's own statements. *Davidson*, 889 F.3d at 964–65. Like in *Davidson*, Plaintiff here alleged, citing numerous sources, that gums do not grow

back. ER-124. Plaintiff also alleged that Haleon put on its website (but *not* on the front of the toothpaste box) that "if your gums have already receded, it is not possible for them to grow back. When gum disease has progressed to this stage, a toothpaste alone will not stop or reverse the condition." ER-124. Plaintiff also alleged that "Haleon additionally sells Parodontax-branded toothpastes in its 'COMPLETE PROTECTION' line. The packaging on the 'COMPLETE PROTECTION' line of toothpaste states prominently that it 'Helps Prevent Bleeding Gums' and, *inter alia*, 'reduces bleeding gums,' 'reduces inflamed gums,' and 'removes plaque.' These claims, unlike the 'ACTIVE GUM REPAIR' claims, are scientifically possible." ER-126.

Plaintiff also argued that the simple dictionary definition of "repair" means "to restore by replacing a part or putting together what is torn or broken," or "to restore to a sound or healthy state." ER-78. Instead of ascribing "repair" its actual dictionary definition, the district court made up its own tortured interpretation of "repair" holding that "repairing an eroding wall could mean covering it with sealant and preservative, or it could mean rebuilding the wall, depending on the context." ER-10. Instead of relying on the simple meaning of repair and the context it is actually being used in—a toothpaste label discussing gums—the district court labored over its chosen definition that was fashioned through a series of disanalogous hypotheticals that even Haleon's counsel called "unfair." ER-27, ER-

30-35. At one point, the district court even admitted that "'repair' seems to mean – it just seems from the plain language of it you're not stopping. You're going beyond that. You're fixing." ER-30. Indeed, common sense dictates that when a product says it will "repair gums" and "reverse" gum damage, it will do exactly that. There are no alternative explanations, as the district court suggests. ER-10. Even Haleon could not circumvent the plain meaning of the word in its discombobulated argument and stated that "[repair] can mean reversing." ER-32. That the district court found that the phrases cannot mean "anything about mending structural damage as opposed to arresting it[]" further illustrates the point. ER-11. Based on Plaintiff's allegations, and Haleon's own admittance, Parodontax cannot even do that, because no toothpaste can stop, or in the district court's word, "arrest," gum damage or gum loss. ER-124 ("When gum disease has progressed to this stage, a toothpaste alone will not stop or reverse the condition."). The district court's order must be reversed on this basis.

Likewise, the district court's reasoning that "Plaintiff's complaint raises a more plausible alternative meaning of the phrase: 'active gum repair' denotes that the products 'help prevent bleeding gums and reverse the effects of gingivitis—the earliest and mildest form of gum disease[,]'" is misplaced. ER-10 (quoting ER-124). This interpretation is not consistent with the other representations on the label: "helps reverse signs of early gum damage" and "anticavity and antigingivitis

toothpaste." ER-10 (quoting ER-126), ER-124, ER-127. As explained above, Plaintiff's theory of the case is not predicated on whether Parodontax can reduce some symptoms of gingivitis, but rather whether Parodontax's representations lead reasonable consumers to believe that Parodontax ACTIVE GUM REPAIR can "repair" or "reverse…gum damage" and gum loss. ER-118-38. The district court's analysis takes Plaintiff's complaint and theory of the case out of context by comparing it to an eroding wall, but nowhere on the packaging does Parodontax ACTIVE GUM REPAIR state "help[s] prevent bleeding gums and reverse the effects of gingivitis—the earliest and mildest form of gum disease." ER-10, ER-123. The Parodontax ACTIVE GUM REPAIR toothpaste labels state "ACTIVE GUM REPAIR" and "helps reverse signs of early gum damage." ER-123. The representation "helps reverse signs of early gum damage" does not discount the representation that Parodontax ACTIVE GUM REPAIR toothpaste will actively "repair gums" because no toothpaste can repair gums. ER-124. In fact, the word "reverse" only serves to reinforce that Parodontax ACTIVE GUM REPAIR will "repair" gums. Taken together, and especially in the context of oral care products talking about gums, the plain language of the representations "repair" and "reverse" mean "you're not stopping. You're going beyond that. You're fixing[,]" and that is something no toothpaste, including Parodontax ACTIVE GUM REPAIR toothpaste, can do. ER-30.

Even if the Court determines that the Parodontax ACTIVE GUM REPAIR labels contain qualifying language, that does not change the analysis. Here, "active gum repair" is the most prominent text on the label other than the brand name Parodontax, with the representation "anticavity and antigingivitis toothpaste" in much smaller font. ER-123. The fact that Haleon also sells "Parodontax COMPLETE PROTECTION" with the same active ingredient indicates that "ACTIVE GUM REPAIR" is essentially part of the name of the product itself. Even the representation "helps reverse signs of early gum damage" is in a font smaller than the net weight of the product. ER-123. As held in *Williams* and construed in *Ebner*, if the product label or packaging is—as here—deceptive, "the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner*, 838 F.3d at 966; *see also Williams*, 552 F.3d at 939-40. Regardless, the existence of qualifying language does not warrant dismissal at this stage of the litigation. *Williams,* 552 F.3d at 938-39; *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 532 (N.D. Cal. 2018) (finding that defendant's online disclosures do not establish as a matter of law that a reasonable consumer could not have been misled by the "non-GMO" in-store advertisements).

Finally, the district court's reliance on *Eclectic Props. E., LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 996 (9th Cir. 2014), the only citation in support of its proposition, is misplaced. ER-10. That case involved a complex RICO violation

where the plaintiffs were required to plead intent to defraud. *Eclectic Props. E., LLC,* 751 F.3d at 997. There, this Court held that plaintiffs' allegations did not "tend to exclude the alternative explanation that the transactions were merely a group of business deals gone bad during a deep recession." *Id*. at 1000. The case here is not nearly as extreme, and as explained above, is in accord with *Davidson*, another product labeling case.[2] Since "'[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory,' *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), and since [Plaintiff] alleged a cognizable legal theory, dismissal [is] not appropriate in this case." *Davidson,* 889 F.3d at 965 (citing *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987)) ("[A] pleading satisfies the particularity requirement [of Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (internal quotation marks omitted)).

---

[2] District court cases are likewise in accord. *See, e.g.*, *Maisel v. Tootsie Roll Indus., LLC*, No. 20-CV-05204-SK, 2021 WL 3185443, at *5 (N.D. Cal. July 27, 2021) (declining to dismiss claim that defendant was under-filling popular boxed candy products where plaintiff "made specific allegations under the UCL, FAL, and CLRA of misleading conduct by Defendant that establish the who, what, when, where, and how of the conduct alleged," even in the absence of "actual misstatement on the Products' boxes"); *Mohamed v. Kellogg Co.,* No. 14-CV-2449 L (MDD), 2015 WL 12469107, at *1 (S.D. Cal. Aug. 19, 2015) (similar).

### 2. A Reasonable Consumer Could Plausibly Understand That Parodontax ACTIVE GUM REPAIR Toothpaste Affirmatively Repairs Gums

In addition to erroneously finding that there are no factual allegations to support Haleon's Parodontax ACTIVE GUM REPAIR misrepresentations, the district court erred when it found that no reasonable consumer would take those representations at face value. ER-10-11. Claims under the UCL and CLRA may be dismissed at the pleading stage only "in rare situations." *Reid*, 780 F. 3d at 958 (internal quotation marks omitted). This is not one of them. Here, a reasonable consumer could understand that Haleon's label claims, including "active gum repair" and "helps reverse signs of early gum damage," coupled with the name "Parodontax," imply that Parodontax ACTIVE GUM REPAIR toothpaste will repair diseased, lost or damaged gums.

The UCL and CLRA "prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), as modified (May 22, 2002)) (internal quotation marks omitted). Put differently, the reasonable consumer standard "requires more than a mere possibility that [a representation] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.' Rather, the reasonable consumer standard requires a

probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019) (internal citations omitted). Thus, to state a claim under either the UCL or CLRA, based on false advertising or promotional practices, Plaintiff must "demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Horti v. Nestle Healthcare Nutrition, Inc.*, No. 22-16832, 2023 WL 8613601, at *1 (9th Cir. Dec. 13, 2023) (quoting *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) ("*Trader Joe's*")). Dismissal of UCL and CLRA claims on this basis is appropriate only when "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (quoting *Williams,* 552 F.3d at 939).

The district court's reliance on *Whiteside* actually supports Plaintiff's position. There, Plaintiff alleged that "plant-based" and "natural" labels on baby wipes led her to believe that the wipes were completely made of plants. *Id.* at 783. This Court was "not persuaded by Defendant's contention that '[r]easonable consumers understand that baby wipes don't grow on trees[]' because [r]easonable consumers also understand that meat does not grow on trees, yet technology has advanced such that plant-based meat is now available." *Id.* (citation omitted). Just as this Court held "[c]onsumers could reasonably suppose that manufacturers have

similarly devised a way to make baby wipes using only plant-based compounds[,]" this Court should hold that consumers could reasonably suppose that manufacturers have devised a way to manufacture toothpaste that repairs gums and reverses gum damage. *Id*. Indeed, one only needs to look to Haleon's own product offerings, one called Parodontax COMPLETE PROTECTION and the other called Parodontax ACTIVE GUM REPAIR to support this contention. ER-126-27. While the "Parodontax COMPLETE PROTECTION line advertises that it "helps prevent bleeding gums," and, *inter alia*, "reduces bleeding gums," "reduces inflamed gums," and "removes plaque" the "Parodontax ACTIVE GUM REPAIR line at issue promises to "repair gums" and "reverse" gum damage. ER-126-27. It is reasonable that a consumer, when faced with the choice between a product that simply "reduces" symptoms and one that "repairs" and "reverses" them would choose the latter, believing it could do what it purports. Especially when both are sold on the same shelf with the same active ingredient.

The facts here are better than *Whiteside,* which considered "plant-based" baby wipes, as gingivitis and periodontal disease, and the treatment and remedies for them, are not in the common language of the average consumer. *Whiteside,* 108 F.4th at 783. The reasoning of this Court in *Whiteside* further illustrates the point:

> In *Trader Joe's*, we noted that "[c]onsumers of Manuka honey, a niche, specialty product, are undoubtedly more likely to exhibit a higher standard of care than 'a parent walking down the dairy aisle in a grocery store, possibly

> with a child or two in tow,' who is 'not likely to study with great diligence the contents of a complicated product package.'" Here, Plaintiff alleges that she is a parent without any specialized knowledge, purchasing baby wipes for her young child. *Trader Joe's* makes clear that consumers of everyday items are not expected to study labels with the same diligence as consumers of specialty products.

*Id.* at 782 (citing *Trader Joe's*, 4 F.4th at 884) (internal citations omitted). The district court's holding that not a single reasonable consumer could interpret Haleon's representations "active gum repair" or "helps reverse signs of early gum damage" as able to mend gums, including signs of gum damage, i.e. periodontal disease, relies on the assumption that a reasonable consumer knows toothpaste cannot repair "damage such as gum recession, bone loss, or periodontal pocketing." ER-11 (quoting ER-127). That is not the case. As explained above, "[t]he FDA cautioned sellers of oral care products against representations not specifically discussed in the proposed monograph, since such statements could—and in this instance, do—mislead consumers." ER-126 (the ANPR itself states that the indications of the antigingivitis products should "provide a reasonable expectation of results to be anticipated from use of the product."). Toothpaste is an everyday item, and Haleon and the district court cannot expect that everyday consumers have a deep knowledge of gingivitis, periodontal disease, and the symptoms, treatment, and remedies for each. *Whiteside,* 108 F.4th at 782. Accordingly, Plaintiff's

interpretation of the Parodontax ACTIVE GUM REPAIR toothpaste labels is not unreasonable, especially at this phase of the litigation.

Likewise, this Court's recent decision in *Horti* is edifying. There, this Court considered the product name "Glucose Control," the label "designed for people with diabetes," and the claim that the product "helps manage blood sugar[,]" all representations that "specifically reference the disease of diabetes and claim to help consumers 'control' glucose and 'manage' blood sugar." *Horti*, 2023 WL 8613601, at *1. Despite the district court's holding that "the pleading fell short because the Boost product labels would not lead reasonable consumers to believe that the over-the-counter drink would treat or cure diabetes, a chronic disease for which there is no known cure[,]" *Horti v. Nestle HealthCare Nutrition, Inc.*, No. 21-CV-09812-PJH, 2022 WL 16748613, at *5 (N.D. Cal. Nov. 7, 2022), *rev'd and remanded*, No. 22-16832, 2023 WL 8613601 (9th Cir. Dec. 13, 2023), this Court held that "[a] reasonable consumer could understand these representations to indicate that the product will have a positive effect on diabetes and blood sugar levels." *Horti*, 2023 WL 8613601, at *1. That defendant offered contrary interpretations of the product labels (here, alternate definitions of "repair") was a "disagreement [] not appropriate for resolution on a motion to dismiss." *Id*. Similarly here, Plaintiff alleged that the "repair" and "reverse" representations imply that Parodontax ACTIVE GUM REPAIR can repair or reverse gum disease, loss, or recession, and that the product

name "Parodontax" sounded medical, like periodontitis, and was a further attempt to confuse consumers about Parodontax ACTIVE GUM REPAIR toothpaste's alleged ability to repair gums and reverse gum damage. ER-123. As in *Horti*, the district court's logic contains the same flaw: it requires lay consumers to know what periodontal disease is, its treatments, the approved uses and limitations of stannous fluoride, and the potential benefits of Parodontax ACTIVE GUM REPAIR, which, much like the products in *Horti*, explicitly states that it can do something it cannot. *Horti*, 2023 WL 8613601, at *2 ("Nor, at the pleading stage, can we draw conclusions as to whether the consumers who purchased BOOST Glucose Control were more knowledgeable about its potential health benefits or lack thereof.").

Like *Whiteside* and *Horti*, Plaintiff is only asking that the Court find it plausible that a reasonable consumer would ascribe the normal meaning to the words on Haleon's labeling: that Parodontax ACTIVE GUM REPAIR actually does what it says and actively "repairs gums" and "helps reverse early signs of gum damage." ER-127. This is precisely the type of claim this Court, district courts, and California courts regularly hold pass muster under the UCL and CLRA, and there is no shortage of examples. *Kang v. P.F. Chang's China Bistro, Inc.,* 844 F. App'x 969, 971–72 (9th Cir. 2021) ("we cannot assume that reasonable consumers would necessarily look past the term 'krab mix' in the item they were ordering to notice that 'crab' appeared as an ingredient in other items on the same menu."); *Fitzhenry-Russell v.*

*Keurig Dr. Pepper Inc.*, 345 F. Supp. 3d 1111, 1115 (N.D. Cal. 2018) (plaintiffs argued that the Canada Dry label "Made from Real Ginger" misleadingly implied that Canada Dry is made using ginger root rather than other ginger byproducts); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 683 (2006) (representation that products were "Made in U.S.A." when parts of the product were made elsewhere was deceptive as a matter of law). Despite the weight of authorities holding otherwise, the district court ignored Plaintiff's allegations that Haleon's claim that Parodontax ACTIVE GUM REPAIR toothpaste can "repair" gums or "reverse…gum damage" when it cannot, in fact, repair gums or reverse gum damage or loss, has a capacity, likelihood, or tendency to deceive or confuse the public—and did, in fact, deceive and confuse the public. ER-126-27.

### B. Plaintiff's UCL Claim Should Survive Under the "Unfair" And "Unlawful" Prongs

The district court did not expressly address Plaintiff's "unfair" and "unlawful" claims in its decision, which do not rise and fall with Plaintiff's "fraudulent" allegations. ER-4-14. "Each prong of the UCL is a separate and distinct theory of liability[.]" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted). With respect to the unlawful prong, it is clear that "[v]irtually any state, federal, or local law can serve as the predicate." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (citation omitted). Similarly, the "unfair" prong of the UCL is intentionally broad and creates a cause of action even if the challenged

business practice is not proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). To plead a claim under the UCL's unfair prong, a plaintiff must allege facts sufficient to evidence that "the gravity of the harm to the victim outweighs the utility of the defendant's conduct," or the violation of some public policy "tethered to some specific constitutional, statutory, or regulatory provisions." *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014).

Despite Plaintiff's allegations that Haleon's conduct is unlawful, "violating the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.; California's Sherman Food, Drug and Cosmetic Law, Health & Safety Code §§ 109875 *et seq*.; and the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*.", the district court's dismissal of Plaintiff's claims appears to be predicated solely on the finding that a reasonable consumer would not be misled, effectively ignoring the unlawful prong of the UCL. ER-10-11, ER-131-2. This alone may warrant reversal. *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1149-50 (9th Cir. 2020) ("Because the district court did not address [plaintiff's claim], we decline to reach this issue and remand for the district court to conduct this analysis."); *Kang*, 844 F. App'x at 972 ("Because the district court did not address any of those arguments in its decision, we do not reach them here."). And, as argued above, it defies logic that the district court would ignore Plaintiff's allegation that the FDA itself cautioned against

misleading representations like the ones at issue, especially given the FDCA itself prohibits labels that are "false or misleading." 21 U.S.C. § 352(a); *Ebner*, 838 F.3d at 965.

Plaintiff also alleged that the representations are unfair because Haleon "has been unjustly enriched by its false, misleading, and deceptive representation as it unfairly enticed Plaintiff and the proposed class members to purchase the [Parodontax ACTIVE GUM REPAIR] instead of similar, less expensive toothpaste products sold by other manufacturers." ER-132. Because the utility of Defendant's conduct (false representations to get consumers to buy its product) is outweighed by the gravity of harm to Plaintiff, consumers, and the competitive market, Defendant's conduct is "unfair." *Id.* In other words, there is no utility at all to the conduct. Thus, Plaintiff has at the very least alleged facts sufficient to plead a claim under the "unfair" prong of the UCL.

Notably, the district court recognized that Defendant does not challenge Plaintiff's UCL claim on the basis of equity, and thus "does not resolve whether it should be dismissed[.]" ER-12. Indeed, Haleon never directly addressed the "unlawful" prong and flat out did not address the "unfair" prong of Plaintiff's UCL claim. ER-42-56, ER-88-117. While Plaintiff recognizes that in light of this Court's holding in *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), the district court was not required to specifically address Plaintiff's "unfair" claim, that does not

change the fact that Haleon did not argue against it or Plaintiff's "unlawful" claim in its motion to dismiss. *Id.* at 1127; ER-42-56, ER-88-117. "It is a long-standing rule in the Ninth Circuit that, generally, 'we will not consider arguments that are raised for the first time on appeal.'" *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007) (quoting *Smith,* 194 F.3d at 1052). Thus, Haleon's arguments should be deemed waived and to the extent the district court's ruling is reversed, Plaintiff's UCL claim under the "unlawful" and "unfair" prongs should proceed for this reason alone. *See Greisen*, 925 F.3d at 1115.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the judgment below be vacated and the case remanded for further proceedings.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: October 31, 2025

By: /s/ *Matthew B. George*
Matthew B. George

Laurence D. King
Matthew B. George
Blair E. Reed
Clarissa R. Olivares
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707

Email: *lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*breed@kaplanfox.com*
*colivares@kaplanfox.com*

Justin B. Farar
**KAPLAN FOX & KILSHEIMER LLP**
12400 Wilshire Boulevard, Suite 910
Los Angeles, CA 90025
Telephone: 310-614-7260
Email: *jfarar@kaplanfox.com*

*Counsel for Plaintiff-Appellant Joshua Cross and the Proposed Class*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-5345

I am the attorney or self-represented party.

**This brief contains** 9,074 **words,** including 50 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ____________.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Matthew B. George **Date** October 31, 2025

*(use "*s/[typed name]*" to sign electronically-filed documents)*